The next case is D. A. King v. Secretary of Education, case 2010-5-06-18. Mr. William John Connolly. Hi, good morning, Your Honor. I'm also here to judge a case in Chicago two years ago. I'd like to say we're going two years from now. Judge Rader, it's entirely fitting that you're here today. Two of the cases upon which the Respondent relies, and rightfully so, the Attagate by Bryce, the Bryce decision, and the Marcus decision. Attagate by Bryce. And the Bryce decision was written just four years ago. And I would not have been here today except for several recent Supreme Court decisions. The calls questioned the use of the term jurisdiction. They say, you know, it doesn't really mean we've been sloppy in the past, we haven't always used it the right way. You know, you have to put a little congressional intent to see what jurisdiction means. So I said, well, that's interesting. And then Judge Rader set up another panel, a remarkable case. And that's the case that decided to win the unsubstantiated argument. I don't think you need to review which case every member of the panel has. I want to discuss the issues. You've got Bryce, which has said no fees unless you file a valid claim, and that it can't be valid if it's untimely. That's a jurisdictional issue. That's what Bryce said. Now how do we get by that right? It's a combination of factors. It is the recent Supreme Court decisions that I've listed in my brief to talk about jurisdiction as sometimes being a drive-by reference. As the case I quote in the J.R. Sandengravel case, it's a short and judicial case. Couldn't one read J.R. Sandengravel to reinforce Bryce, both dealing in a sovereign immunity context and reaffirming the notion that in that particular context the jurisdiction has a reinforced role? It could be read that way, Your Honor. As a matter of fact, the respondent will certainly argue it that way. However, the number one purpose of the Vaccine Act is to stop civil lawsuits. That's the number one purpose. It's not to compensate individuals injured by vaccines. It's to stop lawsuits. Some people have said that when someone starts off an argument in a policy, it means they lose all the law and the facts. At least that's what the law of the vaccine industry. Your Honor, I concede that the law is against me. I am here today to give this court an opportunity to revisit something in light of these recent Supreme Court decisions and in light of the situation in today's vaccine program where 5,000 autistic children sit, many of whom are poised to file civil lawsuits. And I argue that these people, if they have a reasonable, good faith claim, should first be allowed to go into the vaccine program, as Congress intended, the intended inclusion of the program, not exclusion from the program, by use of a judicial tool such as jurisdiction, a waiver of sovereign immunity, a national tool. It's a tool that judges. The daily work of this court is from Turner. I think it's imperfect in terms of statute. Well, tell us how we would interpret the Sand and Gravel case to overturn Bryce, which is what you guys did. All you can do is say, the court in John R. Sand and Gravel has said take a closer look at the term jurisdiction and take a look at it in light of congressional intent and take a look at it in light of the words of the statute. And congressional intent is to stop lawsuits. The whole vaccine act is to stop lawsuits, is to push people away from civil litigation into the vaccine program. But there is no congressional intent in there regarding whether it is a plaintiff who lost for jurisdictional reasons, untimeliness reasons, tend to win later on, also untimely, and say, well, please. I mean, there's no congressional intent on that. I'm sorry, Your Honor. What you said there was important. I didn't understand your question. You're coming in asking for fees after a previous case, based on a previous case that has been dismissed because it was untimely. Yes, Your Honor. There's no congressional intent on that. Your Honor, the section 12 of the vaccine act gives jurisdiction over all proceedings or petitions of violence. It provides that attorneys are paid, win or lose, if it's a good faith filing with a reasonable basis. It says every aspect of the act pushes people towards the program. It has no fault. But it has to be a properly filed claim, right? But those are substantial issues, Your Honor. Whether it's properly filed is a substantial issue. What's the issue? You rose late. You sat on the market with Japan, and that panel talked about the onset of symptoms. It talked about timeliness issues. You did it just last year. There are 5,000 claims in the vaccine program on autistic children, and because of that decision, there will be hundreds of untimeliness hearings, just like in this case. They're going to be hundreds of them. And if you tell these people, sorry, reprice too. You know, you say you don't get paid, so go sign a contingency agreement, get a lawsuit, file a civil action. Or do you say, no, no, you have a chance to go into the program. That's what Congress intends. It didn't want you to file a civil lawsuit. And we'll pay your transfees. You don't have to pay them, as long as it's reasonable and you've got a good faith basis for it. And that's what I'm asking you to revisit. Take a look at reprice too. I think we understand your argument. We haven't asked to save any time, but if you wish, since we still have some time, we might have a lot of time. I appreciate it. Thank you. Good morning. I'm Linda Cadella, Director of the Santiago League, Secretary of Health and Human Services. Your Honors, the facts of this case are undisputed, and the precise legal issue has already been decided by this Court in reprice, as you pointed out, Judge Rader. Attorneys' fees and costs may not be awarded on a petition as far as untimely under the Act. Is he right that this is going to send 5,500 cases to our district courts? No, sir. We've been hearing this threat in our program now for many years. No, Linda would be right. Is it your arrears that that's not an issue we can deal with? That's absolutely correct. I mean, assuming for purposes of argument only that he was right, and there are a lot of factual legal issues as to why that's incorrect, but assuming for purposes of argument only that he's correct, that doesn't change the language of the Act. It doesn't change what the Court's focus is today, and that is whether or not petitions that are barred as untimely attorneys can recover attorneys' fees. Certainly, Section 15 of the Act, which authorizes attorneys' fees, Section 15 cannot be construed to authorize an award of attorneys' fees on a petition filed under the Act when, in the case of an untimely petition, such a filing is specifically prohibited by another provision of the Act. You're saying there wasn't a petition filed under Section 15? That's absolutely correct. Section 16A2 states in very strong terms, no petition may be filed unless it meets the limitations period. But it was filed. It was filed. But it was not timely. It was not timely. So Congress is saying there should be some due diligence done on the part of petitioners and attorneys before they bring a claim. They should inquire whether or not the case is timely. And I realize that that's not always going to be obvious up front. However, in this case, it should have been once these records came in. Yeah, but I don't understand that, because the attorneys' fees provision under the Vaccine Act gives attorneys' fees even if the petitioner loses. That's correct. Yeah, but it sets the standard of reasonable due pay. That's correct. I don't think the other side is advocating that even if it's filed in bad faith or it's unreasonable with respect to timeliness, that attorneys' fees wouldn't come into play in any of that. Well, Section 15E1 that authorizes attorneys' fees is strictly tied to the filing of the petition. And Section 16A2 says you cannot even file your petition. You may not file a petition for compensation. That's not my point. I was responding to your argument that suggested this. I mean, we're talking only about the award of attorneys' fees where someone reasonably in good faith thinks the petition they have filed is timely, and it turns out for whatever reason that it's not. Right. Correct. Correct. However, you can't divorce Section 15 from Section 16A2. Section 15, the awarding of attorneys' fees, whether or not the petitioner is awarded other compensation, whether or not the special master finds that there is a vaccine injury, any compensation awarded under the program is tied to the filing of a petition, and that's the express language of Section 15. What about the idea that subsequent Supreme Court decisions that, if not overruling Bryce, change the law? Well, as we point out in our brief, Your Honor, the Supreme Court decisions cited by petitioners in this case are an opposite. Most deal with issues of court-prescribed rules of practice. And as the Supreme Court in Bowles pointed out, much of the cases that are relied upon by appellants in this case, the Supreme Court in Bowles distinguished, and Judge Miller also distinguished all of the cases that the appellants rely upon as being inapposite or as expressly overruled by J.R. Sand. With J.R. Sand, you have to have a petitioner to get around J.R. Sand. It's our position that they can't. I mean, yes, I acknowledge that the Tucker-Rackham Vaccine Act are separate acts. However, they're both dealing with important claims and suits against the government for monetary damages. They both have the language that claims cannot be filed. They do not meet the statutory requirements. They are both tied to limitations on the waiver of sovereign immunity. So I think that J.R. Sand is completely appropriate for the vaccine act, and appellants simply cannot get around that holding. And Mr. Conway talks about here today in his brief about congressional intent. Well, congressional intent is clear, and that's the language of the act. Certainly, Congress did not intend to award attorneys fees in claims that they did not want brought in the first place. He also talks about how the stakes are far different today than they were in 2004 when the court decided Bryce. Well, there's but one interpretation of the act, and that's the correct one. The interpretation of the statute does not change given the way the wind is blowing in a given year. And the court in J.R. Sand pointed that out when they talked about, really, the sacrosanct nature of striatocysis. And this court has already decided this issue first in Martin and again in Bryce. And I think the admonition of the Supreme Court in J.R. Sand is particularly active today. Another rationale of the court in J.R. Sand is they looked at the court's long interpretation of the whole finding of Section 2501 of the Tucker Act was jurisdictional. I will say that, as I mentioned before, this court has looked at section at whether or not attorneys fees can be awarded in claims that are untimely or claims that are far jurisdictional. And now, two times, it was held attorneys fees cannot be awarded. So there is striatocysis. Another issue to keep in mind is in Bryce 1, this court talked about congressional intent and whether or not ethical tolling applied to 1682. And they specifically talked about the language in the legislative history that Congress wanted claims litigated in the vaccine program to be expeditious and quick and to avoid collateral litigation. And if ethical tolling were applied to Section 1682, there would be a lot of collateral litigation. My proposal to you, that's exactly what would happen if Appellant's argument proves successful in this case. We need to, instead of- My good argument is that they ought to be able to have an incentive to hire attorneys. Attorneys ought to have an incentive to do reasonable cases in good faith, even if the timing is rather than the merits or the issue. But if every claim that's filed, and it turns out to be timely, if petitioners are filing attorneys fees and costs for their attorneys, they were going to be saddled with, was it reasonable? Had property diligence been done before they filed their claim? What is property diligence? It's going to take time away from actually litigating and having the special masters decide claims that were properly filed, that were timely filed. And instead, they're going to make this argument of how much attorneys fees should be awarded. Was it reasonable? You know, I talked- Mr. Homer talked, excuse me, he commonly talks about all the timeliness hearings that are going to result in autism litigation. Well, first and foremost, this is not an autism case. And second of all, there's no timeliness- It's not a what case? This is not an autism case. Autism. There was no timeliness hearing in this case. Once objections came in, it was clear. Case of time, autism. So this is not a case that's illustrative of the argument that there's going to be hundreds, if not thousands, of timeliness hearings. I submit to you that that's not the case. I do acknowledge that there will be timeliness hearings in many autism cases, but not the hundreds of thousands that have been argued here today. So if there's no further questions, for the reasons discussed today, I believe that we respectfully submit that this court should adjourn the hearing session. Thank you very much. Mr. Conway, do you have any rebuttal? Yes, Your Honor. First of all, this case was not an autism case, but it was a mercury case. It was a good mercosal case. That's why we're going to suspend it. In autism, which is where this timeliness hearing is going to take place, it's a very insidious disease, and it's very difficult to treat. It's not relevant to the issue before. It's relevant to the issue that there will be timeliness hearings because there was so much hurry here. And many of these people, with price to their stands, who have gathered claims, who would be invited to the program, will not have their day here. Your Honor, I suggest to recommend to the full court, as all panel can do, to take this case on bond to overruled rights. I'm asking you to do that, Judge, because these mercosal cases pose a very real threat to civil litigation. And I guarantee you, there are a bunch of decisions in the Code of Special Masses about to come down, where it's been tried to use vaccines to cause or contribute to autism. A bunch of these are going to come down. It's going to have a big impact. Most of the attorneys in the vaccine program with these autism cases knew nothing about the program. They took their clients. They wanted to sue years ago, but they were forced into the program. It's a real threat. One case, just one case, can cost millions and millions of dollars in defense costs. It's a real issue. This is what I must address, and that's why I'm bringing it to you. The primary purpose is to prevent lawsuits, and this will inspire lawsuits. Thank you. Thank you. All rise.